# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD E. STEIN and JACQUILYN S. STEIN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>TEEKAY CORP., PETER EVENSEN, and VINCENT LOK,<br><br>     Defendants. | Case No: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Dated: March 1, 2016 |

Plaintiffs Ronald E. Stein and Jacquilyn S. Stein, by and through the undersigned attorneys, allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, counsel's investigation, which includes, without limitation: (1) a review and analysis of regulatory filings by Teekay Corp. ("Teekay" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"); (2) a review and analysis of press releases and media reports issued by and about the Company; and (3) a review of other publicly available information concerning Teekay. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION AND OVERVIEW

1.     This is a securities class action on behalf of all purchasers of Teekay common stock between June 30, 2015 and December 17, 2015, inclusive (the "Class Period"), asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.     Defendant Teekay was founded in 1973 as a regional shipping company and tanker operator. Today, Teekay has a diversified fleet with over $12 billion in assets and some of the world's largest fleets in the Company's core markets, including: floating production storage and offloading; floating storage and offloading; shuttle tankers; HiLoad DP; unit for maintenance and safety; ocean towage; liquefied natural gas ("LNG"); liquefied petroleum gas ("LPG"); crude tankers; and long-range product tankers.

3.     Teekay gets the vast majority of its cash flow from the distributions paid by its master limited partnerships ("MLPs"), Teekay LNG Partners LP ("TGP") and Teekay Offshore

Partners LP ("TOO").  TGP includes all of Teekay's LNG and LPG carriers.  TOO includes all of Teekay's shuttle tanker operations, floating storage, and off-take units, as well as some other vessels.

4.      Teekay is a general partner with incentive distribution rights.  A MLP is a limited partnership that is publicly traded on an exchange qualifying under Section 7704 of the Internal Revenue Code.  MLPs receive their income from qualifying sources, including refining of oil and gas and production of alternative fuels.  MLPs pay their investors through quarterly required distributions, the amount of which is provided for in the contact between the limited partners and the general partner.  The higher the quarterly distributions to the limited partners, the higher the management fee paid to the general partner.

5.      On June 30, 2015, the start of the Class Period, Defendants increased Teekay's quarterly dividend 75% to $0.55 per share.  At the same time, Defendants assured investors that the Company would at least maintain this higher dividend, and that Teekay intended to increase the dividend by 15-20% in the coming years.

6.      During the Class Period, Teekay and certain of its executive officers issued false and misleading statements to the public indicating that the Company remained on track to continue to pay out high dividends, and continued to promise that Teekay would increase the dividend by 15-20% in the near term.  Throughout the Class Period, Defendants issued materially false and/or misleading statements regarding the Company's dividend payments to its shareholders.

7.      The truth, however, was that Teekay would not be able to maintain these high dividend payments, and the Company certainly could not increase the dividend in the years ahead.

8.      Then on December 16, 2015, Teekay shocked the market when it announced that it was slashing its dividend by 90% - from $0.55 per share to just $0.055 per share.  On this news the share price of Teekay common stock plummeted 58 percent.

9.      As a result of Defendants' wrongful acts and omissions, Teekay stock traded at artificially inflated prices during the Class Period, and Plaintiffs and other Class Members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

11.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and Section 27(c) of the Exchange Act (15 U.S.C. §78aa(c)).  Teekay maintains offices at 281 Tresser Blvd., Suite 501, Stamford, CT 06901, which is in this District.  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

12.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.      Plaintiffs, as set forth in the accompanying certification, incorporated by reference herein, purchased Teekay common stock during the Class Period and suffered damages as a

result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14.     Defendant Teekay is headquartered in Hamilton, Bermuda, and incorporated in the Republic of The Marshall Islands.  Its common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "TK."  Teekay maintains offices at 281 Tresser Boulevard, Suite 501, Stamford, Connecticut 06901.

15.     Defendant Peter Evensen ("Evensen") joined Teekay in 2003 as Senior Vice President, Treasurer, and Chief Financial Officer.  He has served in various capacities at Teekay since, and in April 2011, Evensen became Teekay's President and Chief Executive Officer. Upon information and belief, Evensen resides in Connecticut.

16.     Defendant Vincent Lok ("Lok") has served as Teekay's Executive Vice President and Chief Financial Officer since 2007.

17.     Defendants Teekay, Evensen, and Lok are collectively referred to herein as the "Defendants."

18.     Defendants Evensen and Lok are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Defendant Teekay was founded in 1973 as a regional shipping company and tanker operator.  Today, Teekay has a diversified fleet with over $12 billion in assets and some of the world's largest fleets in the Company's core markets, including: floating production storage and offloading; floating storage and offloading; shuttle tankers; HiLoad DP; unit for

maintenance and safety; ocean towage; liquefied natural gas; liquefied petroleum gas; crude tankers; and long-range product tankers.

20.     Teekay gets the majority of its cash flow from distributions paid by its master limited partnerships TGP and TOO.  MLPs are limited partnerships that are publicly traded on exchanges specifically designated by the Internal Revenue Code.  MLPs receive their income from qualifying sources, which in the instance of Teekay's MLPs, are the refining of oil and gas and the production of alternative fuels.  MLPs pay their investors through required distributions, the amount of which is provided for in the contract between the limited partners and the general partner (Teekay).

21.     As a result of this relationship, the higher the distributions paid by the MLPs to their investors, the more money that Teekay can provide in dividends to its investors.  In short, Teekay's stock price depends heavily upon the dividends that the Company provides to its investors.

22.     On June 30, 2015, Teekay released its financial results for the second quarter of 2015.  The Company concurrently announced that it was increasing its divided to $0.55/share – a 75% increase.[1]

**Defendants' Materially False and Misleading Statements**

23.     On August 7, 2015, the Company held an earnings call with analysts.  On this call, Defendant Evensen issued several false and misleading statements to investors on behalf of the Company.  These include:

- "Firstly with the second quarter dividend, we implemented Teekay's new dividend policy providing an initial increase of 75% to 55 cents per share which equates to ***an annualized dividend of $2.20 per share*** with future increases linked to the growing dividend cash flows we received from our

---

[1] http://teekay.com/blog/2015/06/30/teekay-corporation-to-complete-sale-of-the-knarr-fpso-and-announces-dividend-increase-of-75-percent/.

daughter entities.  With a robust pipeline of over 6 billion of current known growth projects at our daughter entities and additional growth projects that our daughter entities are pursuing, *we are targeting Teekay's dividend to grow further by an average of 15% to 20% per annum for at least the next 3 years*."

- "With Teekay Parents new dividend linked to the growth of dividends at our underlying daughter businesses, the ability of our daughters to access competitively priced bank financing and multiple capital markets in turn *supports our ability to achieve Teekay Parents targeted dividend growth of 15% to 20% per year.*"

- "So we think they're good investments and we can take advantage of dislocations and *we like the dividend flow that is going to come out of all of our daughter companies*.  So that's how we look upon it."

[Emphasis added].

24.     Later in August 2015, one analyst wrote: "As expected, TK increased its dividend by 75% to an annualized rate of $2.20/share and plans on linking future dividend increases to the growing cash flows from Teekay's publicly-listed daughter entities [TGP and TOO].  We believe this dividend reset positions TK as a highly-discounted MLP GP with solid visibility on 15%+ dividend growth (from a higher base) for the next several years."

25.     On October 5, 2015, Teekay announced that it was, for the second consecutive quarter, paying a dividend of $0.55 per share to its investors, payable on November 19, 2015.[2]

26.     On November 6, 2015, Teekay held another earnings call with analysts.  On this call, Defendant Eversen issued the following false and misleading statements on behalf of the Company:

- "Teekay Parent's new dividend policy that was implemented in the second quarter links future dividend increases to the growing dividend cash flows, we received from our daughter entities.  *With a robust pipeline of approximately $6.2 billion of current known growth projects at our daughter entities stretching to 2020, and additional growth projects that our daughter entities*

---

[2]  http://teekay.com/blog/2015/10/05/teekay-corporation-declares-dividend-30/.

*are pursuing, we are targeting Teekay's dividend to further grow by an average of 15% to 20% per annum for at least the next three years*."

- "Looking ahead, we expect Teekay Parent's free cash flow will continue to grow as our underlying MLPs continued to deliver on their robust pipelines of profitable and accretive growth projects and if Teekay Tankers' increase its future dividends."

- "As we laid out last year when we launched the new or announced the new dividend policy, our current coverage ratio targeted range is about 1.15 to 1.12. You said, we are well above that, although in the third quarter there was - some of that is related to business development fees. So *we are ranging above that and we are expecting to be above that in Q4 as well*."

[Emphasis added].

27.     Also on this November 6, 2015 call with analysts, Defendant Lok stated: "Looking ahead, we expect GP cash flows to be consistent in Q4 compared to Q3.  OPCO cash flows are expected to decrease slightly as Q3 included the business development fees I just mentioned which will be partially offset by the Foinaven operational incentive revenue recognized annually in the fourth quarter of each year which we currently estimate to be approximately $10 million to $12 million this year.  As a result of the above, we are expecting a slightly lower dividend and coverage ratio in Q4 compared to Q3, *but still above our target range*."  [Emphasis added].

28.     On this same November 6, 2015 call, one analyst specifically asked Defendant Eversen about the Company's dividend policy:

> **Michael Webber** - Okay, fair enough.  You mentioned TNK floating their or I guess revisiting their dividend policy later this winter and you talked about this cash flows in a bit I guess previously, but I guess as it stands now considering it is I guess bit of a different environment, I am curious how are you guys thinking about the use of those cash flows at the parent level what do they eventually get folded in to the dividend methodology, use of cash to delever more I guess may just a long term how do you think about that considering it is a bit of different silos and save the operating cash you have at the parent which would eventually probably go down the daughters.

**Peter Evensen** - Sure.  If Teekay Tankers increases its dividend which they are going to take up with their December board meeting, the amount that we receive is 26% owner.  It is not that significant compared to the amount we receive from the two MLPs.  So we would add that in, ***but that only goes to further support the 15% to 20% target that we have to grow the Teekay dividend***.

[Emphasis added].

29.     Defendants' misstatements from the November 6, 2015 earnings call are particularly nefarious, since they were issued only approximately one month before Teekay would reveal the truth about its dividend.  The close temporal proximity gives rise to the reasonable inference that Defendants knew these statements were false and/or misleading at the time Defendants issued them.

30.     Indeed, when Defendants promised to review Teekay's dividend in the coming quarter, one analyst wrote "we hope for a positive reaction to these results, with focus on nice inflection in GP cash flow and very strong dividend coverage."

31.     Defendants' statements in ¶¶23, 26-28 above were materially false and/or misleading when made because Defendants misleadingly omitted and/or misrepresented that, among other things: (1) the Company's repeated assurances that it would maintain a quarterly dividend of at least $0.55 per share were baseless; (2) the Company knew, based on then-present facts, that it could not support future dividend payments in excess of $0.55 per share; (3) the cash flows from the Company's MLPs – TGP and TOO – could not possibly sustain such high dividends; and (4) Teekay misled the market about the strength of its business and financial condition.

**The Fog Begins to Lift and the Truth is Revealed**

32.     On December 16, 2015, Teekay issued a press release in which it announced a remarkable about-face: the Company's "Board of Directors has approved a plan to reduce the Company's quarterly dividend to $0.055 per share, down from $0.55 per share in the third

quarter of 2015, commencing with the fourth quarter of 2015 dividend payable in February 2016."[3]  On this news, Teekay's share price declined 58%.

33.     Analysts were stunned by Teekay's decision to abruptly slash its dividend, especially in light of its Class Period statements.  For example, Deutsche Bank wrote: "Undoubtedly we should have done this a long time ago given the market environment for yielded-related names.  But our confidence in the company's ability to continue paying its dividend kept us at a Buy (supported by the significant increase in TK's dividend implemented just five months ago).  We couldn't have been more wrong given yesterday's 90% dividend cut (which we viewed as more strategic than necessary)."  Deutsche Bank further commented that the reduced dividend was "a surprising announcement" that "represents a significant about-face for the company."  Deutsche Bank cut its price target from $60 to just $10 per share.

34.     On January 20, 2016, Teekay confirmed that its dividend would be only $0.055 for the quarter ended December 31, 2015, down from $0.55 per share in previous quarters.[4]

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased or otherwise acquired Teekay common stock during the Class Period (the "Class") and were damaged thereby.  Excluded from the Class are Defendants, the directors and officers of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

---

[3]  http://teekay.com/blog/2015/12/16/teekay-corporation-announces-plan-to-reduce-its-quarterly-cash-dividend/.

[4]  http://teekay.com/blog/2016/01/20/teekay-corporation-declares-dividend-31/.

36.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Teekay securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Teekay or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

39.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and management of Teekay;

(c)     whether the price of Teekay common stock was artificially inflated during the Class Period; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## LOSS CAUSATION

41.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiffs and the Class.

42.     During the Class Period, Plaintiffs and the Class purchased Teekay securities at artificially inflated prices and were damaged thereby.  When the misrepresentations that had been made to the market, the information alleged herein to have been concealed from the market, and/or the effects thereof were revealed, the price of the Company's securities significantly declined, causing investors' losses.

## APPLICATION OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Teekay securities was open, well developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Teekay securities traded at artificially inflated prices during the Class Period.  Plaintiffs and other members of the Class purchased or otherwise acquired the Company's securities,

relying upon the integrity of the market price of Teekay securities and the market information relating to Teekay, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Teekay stock was caused by the material misrepresentations and/or omissions particularized in this Complaint, causing the damages sustained by Plaintiffs and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Teekay's business, operations, and financial prospects.  These material misstatements and/or omissions created an unrealistically positive assessment of Teekay and its business and financial condition, thus causing the price of the Company's securities to be artificially inflated at all relevant times and, when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Teekay securities was an efficient market for the following reasons, among others:

(a)     Teekay stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Teekay filed periodic public reports with the SEC and/or the NYSE;

(c)     Teekay regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-

ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Teekay was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Teekay securities promptly digested current information regarding Teekay from all publicly available sources and reflected such information in Teekay's stock price. Under these circumstances, all purchasers of Teekay securities during the Class Period suffered similar injury through their purchase of Teekay securities at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

47.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful, cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge, or was reckless in not knowing, that the forward-looking

13

statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Teekay who knew, or was reckless in not knowing, that the statement was false when made.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

48.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase Teekay securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, the Individual Defendants, and each of them, took the actions set forth herein.

50.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Teekay securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Teekay's business, operations, and financial performance and prospects, as specified herein.

52.     Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Teekay's value, performance, and continued substantial growth.   These acts included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Teekay and its business operations and financial prospects, in light of the circumstances under which they were made, not misleading.   As set forth more particularly herein, Defendants further engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.   Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Teekay's financial condition from the investing public, maintaining the contrived guise of a higher dividend, and supporting the artificially inflated price of its securities.   As demonstrated by Defendants' misstatements and/or omissions concerning the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Teekay securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiffs and the other members of the Class acquired Teekay securities during the Class Period at artificially high prices and were damaged thereby.

54.     At the time of said misrepresentations and/or omissions, Plaintiffs and other members of the Class were ignorant of their falsity and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Teekay and its business and prospects, which were not disclosed by the Defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Teekay securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

56.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

57.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of Teekay within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, ownership, and contractual rights, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.     As set forth above, Teekay and the Individual Defendants violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act.  As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

A.      Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure with Plaintiffs serving as class representatives;

B.      Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: March 1, 2016               **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

                                   _ s/ Joseph P. Guglielmo_____
                                   Joseph P. Guglielmo (CT 27481)
                                   Donald A. Broggi
                                   Thomas L. Laughlin
                                   The Chrysler Building
                                   405 Lexington Avenue, 40th Floor
                                   New York, NY 10174
                                   Telephone: 212-223-6444
                                   Facsimile: 212-223-6334
                                   jguglielmo@scott-scott.com
                                   dbroggi@scott-scott.com
                                   tlaughlin@scott-scott.com

David R. Scott (CT16080)
Stephen J. Teti (CT28885)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone:  (860) 537-5537
Facsimile:  (860) 537-4432
david.scott@scott-scott.com
steti@scott-scott.com

*Counsel for Plaintiffs Ronald E. Stein and Jacquilyn S. Stein*

# PLAINTIFF CERTIFICATION
# PURSUANT TO FEDERAL SECURITIES LAWS

<u>Ronald E. & Jacquelyn S. Stein</u> ("Plaintiff"), declares, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the complaint and authorizes Scott + Scott, Attorneys at Law, LLP, and such co-counsel with whom it deems appropriate to associate, to pursue this action on a contingent-fee basis.

2.  Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.  Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff.s transaction(s) in the **TEEKAY CORPORATION** security that is the subject of this action during the Class Period is/are as follows:

| Date | Buy/Sell | No. of Shares | Price Per Share |
|---|---|---|---|
| 8/21/2015 | buy | 1000 | 32.9500 |

5.  During the three years prior to the date of this Certification, Plaintiff has never served, nor sought to serve, as a class representative in a federal securities fraud case unless such case is otherwise identified below.

6.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 9th day of February, 2016 at 3:42 PM EST at Port St. Lucie, FL.

| | |
|---|---|
| Your Printed Name: | Ronald E. & Jacquelyn S. Stein |
| Signature: | /s/ Ronald E. & Jacquelyn S. Stein |
| Mailing Address: | 615 Coconut Ave. |
| | Port St. Lucie FL 34952 |
| Telephone Number: | 772-879-7810 |
| E-mail Address: | record-ron@comcast.net |